UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:25-cr-469-KKM-NHA

CRUZ ALVAREZ-DIAZ

**UNITED STATES' SENTENCING MEMORANDUM**

The Court should sentence the defendant, Cruz Alvarez-Diaz (Alvarez-Diaz), to a sentence in his applicable guideline range of 12-18 months as calculated by the Probation Office. Doc. 87 at 11. In support thereof, the United States provides the following:

**FACTUAL BACKGROUND**

The defendant conspired to traffic in firearms, in this case machinegun conversion devices (MCDs), which are used to convert semiautomatic firearms into fully automatic machineguns. According to the notice of maximum penalty, elements of the offense, personalization of elements and factual basis filed by the United States before the defendant pleaded guilty to Count One of the Indictment, *see* Doc. 66, the following are the facts of this case:

In August 2023, a cybercrimes team from Homeland Security Investigations ("HSI") and the United States Postal Inspection Service ("USPIS") began targeting websites selling parts designed to convert semiautomatic firearms

into fully automatic machineguns. These firearm parts were MCDs, sometimes known as "Glock switches" and "auto sears," which convert a weapon into a machine gun, as defined in 26 U.S.C. § 5845(b). MCDs themselves, whether or not installed onto a firearm, qualify as machineguns under the same statute. "Glock switch" MCDs are manufactured specifically for use and installation onto Glock handguns.

*Interdiction of Parcel.*   On November 4, 2024, agents received information regarding three suspected MCD purchases made by "Joel Diaz." The information included the following:

a.   Shipping Name: Joel Diaz
b.   Address: 36907 Pinecrest Ave, Dade City, FL
c.   Phone: XXX-XXX-3178
d.   Payment: PayPal
e.   Date/Time: 10/31/2024 6:00:27 PM

Using this information, HSI and USPIS identified a United States Postal Service ("USPS") package which corresponded with the order.   USPIS Inspectors in Tampa, FL, detained the parcel (USPS parcel 9400 1118 9956 1467 9721 28).

The name "Joel Diaz," the listed name of the recipient on the parcel, did not appear from law enforcement database searches to be affiliated with the recipient address.

On November 26, 2024, a federal search and seizure warrant was issued for

2

the parcel. Upon opening the parcel, USPIS investigators discovered two additional packages contained within. Each of the two smaller packages contained a "Glock switch."

According to USPS business records, on November 6, 2024, at 11:37:06, a USPS customer signed up for a USPS account associated to 36907 Pinecrest Ave, Dade City, FL 33523 via www.USPS.com.   The name the customer provided was "Tazia Hill."   The phone number the customer provided was (XXX) XXX-1674.

On December 4, 2024, a USPIS Inspector placed a call to (XXX) XXX-1674 (later determined to belong to Sergio TARANGO-Diaz). A person, speaking with what sounded like a male voice, answered the phone. The USPIS Inspector then asked if the individual was "Tazia Hill," to which the person answered in the affirmative.   The USPIS Inspector informed the individual that the parcel could be picked up at the Dade City Post Office. The individual asked if someone else could pick up the package. When asked for the name of the person who would be picking up the package, the individual stated that he did not know. The USPIS Inspector provided the individual with a deadline time the same day by which he would be able to pick up the parcel.

Approximately one hour prior to the deadline, an individual called from (XXX) XXX-1674 and asked if the package could still be picked up. After being

3

told that it could, the individual indicated that someone would be picking up the package. When asked for a name of the person picking up the package, the individual again stated that he did not know, and then later stated the name may be "Victor."

A short time later, a gray pickup truck bearing a Texas license plate parked on Church Avenue, east of the Post Office in Dade City, FL. The vehicle contained three male occupants: Cruz ALVAREZ-Diaz, Sergio TARANGO-Diaz, and one juvenile, ("JUVENILE"). The JUVENILE got out of the vehicle and entered the Dade City Post Office. ALVAREZ-Diaz, located in the driver's seat, and TARANGO-Diaz, located in the rear passenger seat, remained in the vehicle.

Investigators watched the JUVENILE enter the Dade City Post Office and wait in line for the counter. While waiting, the JUVENILE was seen speaking on a mobile device to an unknown party. Once he approached the counter, the JUVENILE asked the clerk at the desk for the parcel. As soon as he took possession of the parcel, investigators detained the JUVENILE and secured the parcel.

Investigators then detained the remaining two individuals in the vehicle. ALVAREZ-Diaz, who was positioned as the driver and claimed ownership of the vehicle, gave verbal consent for investigators to search the vehicle. Upon entering

4

the vehicle, investigators identified and retrieved two phones. One of the phones was retrieved from the front seating area near the driver's seat, and ALVAREZ-Diaz later claimed this phone as his and provided verbal and written consent to search it. The other phone, identified as (XXX) XXX-1674[1], was retrieved from the rear seat where TARANGO-Diaz was seated.   This phone was abandoned by all three vehicle occupants but was determined as a result of searches of all three phones to belong to TARANGO-Diaz.

The JUVENILE and his parents provided consent to search the phone that had been in his possession. During a review of the JUVENILE's phone, investigators identified multiple text messages that were sent to and from phone number (XXX) XXX-1674 (contact name "Piggy"), which referenced the parcel (see *Figure 1*).

In the same conversation, and at the same time that the JUVENILE was waiting in the Dade City Post Office, JUVENILE's phone sent messages such as "Why u hang up" and "Im scared." JUVENILE also appeared to be in the process of trying to warn TARANGO-Diaz at about the time he was detained, but that message was not sent.

---

[1] Investigators called phone number (XXX) XXX-1674, which caused the phone that had been located in the backseat of the vehicle to ring.



**Figure 1. Photo of conversation between JUVENILE's phone and (XXX) XXX-1674 (TARANGO-Diaz's phone).**

Investigators conducted a post-*Miranda*, custodial interview of ALVAREZ-Diaz. During his interview, ALVAREZ-Diaz stated TARANGO-Diaz had asked him for a ride and had told him that they were going to pick up "gun parts." During a review of his phone, interviewers asked ALVAREZ-Diaz who "Jr." was that was referenced in his messages and contacts. ALVAREZ-Diaz identified

TARANGO-Diaz as "Jr."



**Figure 2. Photo of ALVAREZ-Diaz's phone displaying location information for image containing suspected handgun and "Glock switch."**

Further review of ALVAREZ-Diaz' phone revealed a photo of what appeared to be a handgun with an installed "Glock switch." There were also multiple images and videos of what appeared to be firearms and accessories, including MCDs, on the phone.

7

When ALVAREZ-Diaz said during his interview that TARANGO-Diaz told him that they were going to pick up "gun parts," he said he believed the parts were for an "AR" rifle.

When investigators asked ALVAREZ-Diaz who "Joel Diaz" was, he stated that there was no one in their family with that name.

***Additional Information from Search of Phones.*** All of the phones seized were searched after agents obtained a warrant.

***TARANGO-Diaz's Phone.*** The abandoned phone that belonged to TARANGO-Diaz was encrypted, which limited forensic analysis, however several accounts and email addresses found on the phone connected the phone to TARANGO-Diaz, and conversations between TARANGO-Diaz and ALVAREZ-Diaz and conversations between TARANGO-Diaz and the JUVENILE were captured on the phones belonging to ALVAREZ-Diaz and the JUVENILE.

***JUVENILE's Phone.*** TARANGO-Diaz was listed as "Piggy" in the JUVENILE's phone. Discussions between them include discussions about MCDs and other firearms, they were in close contact during the controlled delivery, and Tarango-Diaz sent to the JUVENILE the name and address on the MCD package and the parcel number of the package. The JUVENILE also sent the following message to TARANGO-Diaz: "Im scared."

8

There is also a website screenshot showing the recipient of the MCD order, "Joel Diaz." Discussions with other persons also concerned MCDs and included images and videos that appear to show Glock handguns with MCDs installed.

Older conversations between the JUVENILE and ALVAREZ-Diaz likewise referenced possessing and selling firearms and firearms components and include images and videos that appear to show Glock handguns with MCDs installed.

*ALVAREZ-Diaz's Phone.* There was evidence on ALVAREZ-Diaz's phone of a WhatsApp Group between TARANGO-Diaz, the JUVENILE and ALVAREZ-Diaz that had the option "disappearing messages" turned on.

Communications between ALVAREZ-Diaz and TARANGO-Diaz about firearms were found from earlier in 2024 and 2023. There were also conversations with other parties that included discussions about firearms, including illegal MCDs and "ghost guns."

ALVAREZ-Diaz's phone contained several images and videos of firearms, including firearms that appear to have MCDs installed, and videos of firearms being fired with fully automatic functionality.

One of these videos showed a hand manipulating what appeared to be a MCD installed on a Glock handgun, and ALVAREZ-Diaz admitted to agents in

9

an interview on December 4, 2024, that it was his hand in the video.[2]

In the same interview with agents on December 4, 2024, ALVAREZ-Diaz said he did not know specifically what gun parts were in the package, but he did know it was something illegal, and in reference to a mobile application timer that agents noticed was running, ALVAREZ-Diaz said he knew that something would be wrong if the JUVENILE did not return with the gun parts in two minutes.

*See id.* at 2-10.

## PROCEDURAL BACKGROUND

On September 25, 2025, the grand jury returned a one-count indictment against defendants Sergio Tarango-Diaz and Cruz Alvarez-Diaz. Doc. 1. Count One of that indictment charged the defendants with conspiring to traffic in firearms, specifically machineguns or machinegun conversion devices. *Id.*

On April 24, 2026, defendant Alvarez-Diaz pleaded guilty to Count One of the Indictment before United States Magistrate Judge Natalie Hirt Adams. Doc. 73. The Court adjudicated the defendant guilty, and the defendant's sentencing is scheduled for August 13, 2026. Doc. 76.

In the final PSR, the United States Probation Office correctly calculated the defendant's applicable guideline range of imprisonment for the underlying

---

[2] At his plea hearing, Alvarez-Diaz said that he had not admitted to agents that it was his hand in the video.

offense as 12-18 months based on a total offense level of 13 and a criminal history category of I under the United States Sentencing Guidelines. *See* Doc. 87 at 11.

## CONCLUSION

The trafficking of Glock switches and other MCDs that convert semiautomatic firearms into particularly dangerous fully automatic firearms is a growing problem in the United States. Those involved in gangs and dangerous illegal activities are particularly eager to acquire these devices in order to increase the lethality of their weapons in the event of conflict.

Unfortunately, these devices, despite their dangerousness, are not difficult to acquire. They can be manufactured fairly easily or acquired directly or indirectly from unscrupulous vendors in places such as the People's Republic of China, the origin of the MCDs in this case.

Cruz Alvarez-Diaz was familiar with Glock switches and joined Tarango-Diaz's attempt to acquire them driving the trio to the Dade City Post Office. He was in a WhatsApp chat group with Tarango-Diaz and the juvenile sent inside the Post Office to retrieve the package containing the contraband. He knew that what they were doing was illegal, had a timer app running, and knew that if the juvenile did not return from the Post Office in two minutes, they were in trouble.

11

For the foregoing reasons, the Court should sentence the defendant to a guidelines sentence of 12-18 months.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    /s/ E. Jackson Boggs Jr.
       E. Jackson Boggs Jr.
       Assistant United States Attorney
       United States Attorney No. 080
       400 N. Tampa St., Ste. 3200
       Tampa, FL 33602-4798
       Telephone: (813) 274-6000
       Facsimile: (813) 274-6358
       E-mail: Jackson.Boggs@usdoj.gov

**U.S. v. Alvarez-Diaz**                    **Case No. 8:25-cr-469-KKM-NHA**

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which

will send a notice of electronic filing to the following:

Ronald Marzullo, Esq.

/s/ E. Jackson Boggs Jr.
E. Jackson Boggs Jr.
Assistant United States Attorney
United States Attorney No. 080
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Jackson.Boggs@usdoj.gov